# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF NORFOLK, OCTOBER TERM 1832,
## AT DEDHAM.

---

**PRESENT:**

HON. LEMUEL SHAW, CHIEF JUSTICE,
HON. SAMUEL PUTNAM, ⎫
HON. SAMUEL S. WILDE, ⎬ JUSTICES.
HON. MARCUS MORTON, ⎭

---

### TYLER PETTEE *versus* BENJAMIN HAWES.

A grant of land bounding on or near a pond and stream, reserving the mill and water privilege, is a reservation of the right of flowing the land so far as necessary or convenient, or so far as it has been usual to flow it, for that purpose.

In such case the grantee takes subject to the easement, and the existence of the easement is not an incumbrance on the premises granted.

Nor does it make any difference, whether the mill and water privilege are reserved exclusively to the grantor, or to him and his co-tenant of the mill and water privilege.

ACTION of covenant. The declaration alleges, that the defendant, together with his wife, on August 24, 1814, by their deed of that date, for 1000 dollars, bargained and sold to Hezekiah Pettee, his heirs and assigns, a farm or tract of land in Foxborough, containing about 79 acres, with the privileges and appurtenances thereto belonging, being the farm formerly owned by Simon Morse, and that he therein covenanted with Hezekiah, his heirs and assigns, that the land was free of all

incumbrances ; that Hezekiah, on April 24, 1820, by his deed of that date, bargained and sold to Daniel Pettee, his heirs and assigns, certain parts of the same tract, (describing them ;) that Daniel, on July 3, 1823, by his deed of that date, bargained and sold the last mentioned land to the plaintiff, his heirs and assigns ; that the plaintiff entered upon the same land, and became seised and possessed thereof, and thereby became an assignee of the defendant, of the same, and ought to hold and enjoy the same as a lawful estate in fee simple, free of all incumbrances, according to the covenant of the defendant ; but that the defendant has broken his covenant, for that the land last mentioned was not, at the time of the defendant's deed to Hezekiah, free of all incumbrances, but on the contrary, a part of the land, to wit, ten acres thereof adjoining the stream which runs through the land, and on both sides of the stream, was subject to be flowed by one Amos Morse, his heirs and assigns, and yet is so subject, for the purpose of raising a head of water to drive a certain mill or mills on the stream, without any liability hitherto of Amos's heirs and assigns to make compensation or pay any damage to the owner of the land for the flowing thereof; and that from January 1, 1825, to the date of the writ, a part of the land has been overflowed by the heirs and assigns of Amos Morse for the purpose aforesaid, without the liability of paying the plaintiff any damage or compensation therefor.

The defendant pleads, 1. after admitting that he and his wife did make the deed to Hezekiah Pettee mentioned in the declaration, that they, at the same time and as a part of the same contract and transaction, sold and conveyed to Hezekiah certain other parcels of real estate, as described in their deed of the same date, for the consideration of 450 dollars ; that the contract was entire and for the sale of the parcels in the two deeds described, for the sum of 1450 dollars ; that one piece of real estate described in the last mentioned deed, was one half of a grist-mill and the land under and about the same, and all the privileges to the same belonging, among which was the privilege of raising the water by means of a dam, in manner as set forth in the declaration, this stream and water privilege and dam being the same that are mentioned in the declaration,

and, at the time of the conveyance by the defendant and his wife, owned in common by them and Amos Morse, all which Hezekiah then well knew, and he purchased the whole estate, with all its privileges and appurtenances, and subject to the incumbrance, if any there was on any part of the tract in the deed in the declaration mentioned, arising from the right to raise the water for the benefit of the grist-mill in the other deed mentioned and described, and Hezekiah entered on the same day and became seised and possessed thereof as of one undivided and entire estate.

In his second plea the defendant craves oyer of the deed from Hezekiah Pettee to Daniel Pettee, which, after conveying several parcels of real estate, contains this clause : — " The intent and meaning of the foregoing is to include all I now own of the estate Simon Morse late of Foxborough died seised and possessed of, containing in all about sixty acres, reserving all on the easterly side of the pond and stream with the mill and water privilege." The defendant then pleads, that Hezekiah Pettee, under whom the plaintiff mediately claims, well knowing his own rights and the rights of the other proprietors of the grist-mill and other mills, did, in his deed to Daniel Pettee of a part of the premises by the defendant and his wife conveyed, and under whom the plaintiff immediately claims, except and reserve certain lands on the westerly side of the stream and mill pond complained of, together with the mill and water privilege, being a part of the estate of Simon Morse and by the defendant and his wife conveyed to Hezekiah by the deeds in the first plea mentioned, and thereby retained for the benefit of himself and the other proprietors of the mills, the right of raising the water and flowing the land in the plaintiff's declaration mentioned, in manner as it had been theretofore flowed, and as he and the other proprietors of the mills had a right to raise the water and flow the said land without paying any damage for such flowing, as set forth in the declaration, and thus did by his said deed to Daniel Pettee, under whom the plaintiff immediately claims, convey to him the lands in his declaration mentioned, subject to the incumbrance of the right of flowage for the benefit of the proprietors of the mills, to the extent of the right in the declaration set forth.

*Metcalf,* for the plaintiff, cited in regard to the construction of the deeds, *Jackson* v. *Hudson,* 3 Johns. R. 375 ; *Thompson* v. *Gregory,* 4 Johns. R. 81 ; *Jackson* v. *Gardner,* 8 Johns. R. 308.

*Richardson* and *A. Prescott,* for the defendant, cited on the same subject, *Clap* v. *Draper,* 4 Mass. R. 267 ; *Chickering* v. *Lovejoy,* 13 Mass. R. 51 ; Com. Dig. *Fait,* E 5, E 6, E 7 ; Co. Lit. 143 *a* ; Shep. Touch. 77, ˙100 ; *Chetham* v *Williamson,* 4 East, 469.

*Oct. 31st.*      SHAW C. J. delivered the opinion of the Court. The Court are of opinion that the second plea in bar is good. It appears that the defendant conveyed to Hezekiah Pettee, through whom the plaintiff claims, several tracts and parcels of real estate, at one and the same time and as part of the same transaction, one of which was a tract of land, part of which has since been conveyed to the plaintiff, and one other part of which was half of a grist-mill and the water privilege appurtenant. Subsequently, Hezekiah Pettee conveyed to Daniel Pettee, a part of the land in question, but no right to the mill, and after describing the premises, adds this, " reserving all on the westerly side of the pond and stream, with the mill and water privilege." The grant was ˙of the fee of the land on the easterly side of the brook, and reserving all on the westerly side, and reserving also the mill and water privilege. The effect of this reservation, was to except so much out of the subject matter of the grant. Now we think that the grant of land, bounding on or near a pond and stream, reserving the mill and water privilege, is a reservation of the right of flowing those lands, so far as necessary or convenient, or so far as it has been usual to flow them for that purpose. The raising of a head of water to drive a mill constitutes mainly the mill privilege. But it is this right of flowing the land, of which the plaintiff, who is Daniel Pettee's grantee and who takes his rights only, now complains as an incumbrance. And it is averred in the plea, that the right thus reserved, in the deed, for the benefit of the proprietors of the said mills, was to the extent of the right in the plaintiff's declaration mentioned, and this fact is admitted by the demurrer. Without considering what would

Pettee
v.
Hawes.

have been the rights of Hezekiah Pettee, the defendant's first grantee, on the covenants to him, it seems clear that when he parcelled out the estate, granting some portions and reserving others, this mill privilege was reserved ; it did not pass to Daniel Pettee, nor to the plaintiff as his grantee ; and as the assignment of the covenants was only co-extensive with the premises granted, as this part of the premises did not pass by that grant, the plaintiff did not become assignee of this covenant and cannot maintain an action upon it. It seems to be conceded, that if Hezekiah Pettee had been the sole owner of the mill, this would have been the reasonable construction of the reservation. But it appears to us to make no difference, whether this mill and water privilege was reserved exclusively to himself, or to himself and his co-tenants. Suppose he had previously granted away the whole mill with the mill and water privilege, no doubt he would be barred from claiming any damage against his grantees, for flowing his other land, to the extent to which it had usually been flowed by himself when owner of the mill. The grant of the mill would be intended and construed to be beneficial, and to carry with it the right of flowing, to the usual height, as far as the grantor had a right, and that must necessarily be, to the extent of his own land. When, therefore, he grants this other land, thus subject to a service or easement, in favor of the mill owners, whoever they may be, and reserves the mill and water privilege, it is very clear that his grantee takes subject to such easement, and the existence of the easement is no incumbrance on the premises granted. It is an exception out of the grant. It seems, therefore, immaterial, whether the grantor himself, or any other person, was owner of the mill, at the time of the grant. A question was made, at the argument, whether this was a covenant that runs with the land, and one upon which an assignee can maintain an action ; but the point on which this cause is decided, has rendered it unnecessary to consider that question.

*Plea in bar good.*